UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF RAYMOND VOGELMAN; J. LESLIE CRAWFORD, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN DIEGO, *et al.*, <br><br> Defendants. | Case No. 24-cv-00234-BAS-MMP <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** <br> **(ECF Nos. 46, 66, 75)** |

On October 5, 2022, Raymond Vogelman passed away while in county custody. Mr. Vogelman's mother, J. Leslie Crawford, and The Estate of Raymond Vogelman ("Plaintiffs") brought the present action on his behalf.[1] Plaintiffs sued multiple Defendants, including the County of San Diego, its officers, healthcare contractors, and a psychologist employed by the healthcare contractors, under state and federal causes of action.

Presently before the Court are several motions to dismiss Plaintiffs' second amended complaint. First, the Court addresses the motion to dismiss filed by the County of San Diego and its officers ("County Defendants"). (ECF No. 46.) Next, the Court discusses the motions to dismiss filed by the healthcare contractors: Liberty Healthcare of California, Inc. and NaphCare of San Diego, LLC ("Healthcare Defendants"). (ECF Nos. 66, 75.)

---

[1] Plaintiff J. Leslie Crawford is the sole successor-in-interest to decedent Mr. Vogelman. (Second Am. Compl. ("Compl.") ¶ 4, ECF No. 39.)

24cv0234

Defendant Psychologist Jose Pena submitted an answer to Plaintiffs' second amended complaint denying all allegations. (ECF No. 76.)

The motions have been fully briefed. The Court finds Defendants' motions suitable for determination on the papers submitted. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). As explained below, the Court **GRANTS IN PART with leave to amend** and **DENIES IN PART** Defendants' motions to dismiss.

## I.   BACKGROUND

The Court discusses the factual and procedural backgrounds of the present action.

### A.   Factual Background

Officers booked Mr. Vogelman into custody at the San Diego County Jail on March 3, 2022. (Second Am. Compl. ("Compl.") ¶ 51, ECF No. 39.) Mr. Vogelman was then booked into San Diego Central Jail ("SDCJ"). (Compl. ¶ 52.)

Two days later, he received a medical evaluation by SDCJ medical staff. (Compl. ¶ 53.) The medical staff sent Mr. Vogelman to Enhanced Observation Housing ("EOH") as "High" risk. (Compl. ¶ 54.) There, Qualified Mental Health Provider Christine Anosike evaluated Mr. Vogelman and recommended he remain in EOH. (Compl. ¶ 55.) But Provider Anosike reclassified Mr. Vogelman as "Low" risk. (*Id*.) Soon after, Mr. Vogelman received another medical evaluation from Psychologist Jose Pena. (Compl. ¶ 56.) Psychologist Pena cleared Mr. Vogelman to return to mainline housing. (Compl. ¶ 59.) On March 11, 2022, Mr. Vogelman was transferred to George Bailey Detention Facility ("GBDF") and placed in mainline housing—House 1, Module A ("1A"). (Compl. ¶ 61.)

On April 12, 2022, about a month later, Mr. Vogelman was temporarily housed in a Medical Observation Bed. (Compl. ¶ 63.) There, he had a physical altercation with an inmate. (*Id*.) After the altercation, Mr. Vogelman was sent to the hospital's emergency department. (*Id*.) Mr. Vogelman was given a "Keep Separate" designation in the Jail Information Management System ("JIMS"). (Compl. ¶ 65.) On April 25, 2022, Psychologist Lauralyn Miles wrote in a Qualified Mental Health Provider Progress Note that the altercation apparently started because of Mr. Vogelman's psychosis. (Compl. ¶

24cv0234

70.) In a Progress Note several days later, Psychologist Miles wrote that Mr. Vogelman suffered delusions. (Compl. ¶ 71.) Mr. Vogelman was moved out of medical observation and returned to housing 1A on May 29, 2022. (Compl. ¶ 73.)

After a couple months, on August 3, 2022, Mr. Vogelman was attacked at 10:00 a.m. "while sleeping." (Compl. ¶ 79.) He was taken to the hospital, and the deputy involved, Officer Do, wrote that Mr. Vogelman "should not be placed back into [housing 1A] upon returning from the hospital." (Compl. ¶¶ 87, 90.) Upon Mr. Vogelman's hospital return, a Mental Health Clinician examined Mr. Vogelman and determined he should be sent to EOH as "High" risk. (Compl. ¶ 91.) The next day, Mental Health Clinician Ana Marsters evaluated Mr. Vogelman; while Mr. Vogelman remained at EOH, Clinician Marsters reduced Mr. Vogelman's status to "Low" risk. (Compl. ¶ 92.) Shortly thereafter, Mental Health Clinician Najera evaluated Mr. Vogelman, who was raised to "High" risk. (Compl. ¶ 93.) On August 5, 2022, Behavioral Health Program Coordinator Chantel Enriquez examined Mr. Vogelman, categorizing him as "Low" risk. (Compl. ¶ 95.) Coordinator Enriquez also recorded that "Mr. Vogelman was an unreliable historian and was known to provide conflicting responses to questions." (*Id.*) The following day, Psychologist Pena cleared Mr. Vogelman from the EOH. (Compl. ¶ 96.)

On August 10, 2022, Mr. Vogelman returned to mainline housing. (Compl. ¶ 101.) Officers placed Mr. Vogelman in mainline housing, House 1, Module C ("1C"). (*Id.*) Mr. Vogelman was sequestered for some time given COVID-19 isolation protocols, then returned to housing 1C on September 1, 2022. (*Id.*) On September 5, 2022, Mr. Vogelman was transferred to housing 1A. (Compl. ¶ 102.)

On October 5, 2022, at around 6:56 p.m., deputies conducted a housing 1A routine check. (Compl. ¶ 114.) Upon entering housing 1A, the deputies happened upon a fight in progress between two incarcerated individuals. (Compl. ¶ 115.) The deputies attempted to break up the fight between the two individuals. (*Id.*) But other inmates started fighting, "having no apparent fear of the deputies or any potential consequences." (*Id.*) A call went out to other deputies to "quell the riot." (Compl. ¶ 117.)

24cv0234

At 7:05 p.m., officers saw Mr. Vogelman on his bed with a bloody towel on his face. (Compl. ¶ 119.) The officers asked Mr. Vogelman to get out of bed and placed him in handcuffs. (Compl. ¶ 120.) At 7:09 p.m., officers walked Mr. Vogelman out, but he lost his balance, lay down on the floor, and started to cough up blood. (Compl. ¶ 121.) Officers asked Mr. Vogelman to stand up, but he collapsed again. (Compl. ¶ 123.) One of the officers later told the homicide detective: "[Mr. Vogelman] didn't look good but I didn't have any gloves on and there was blood on him and I'm like—I don't wanna touch him 'cause I don't what [sic] he has. I don't want it." (Compl. ¶ 128.) At 7:16 p.m., officers placed Mr. Vogelman on a gurney and removed the handcuffs. (Compl. ¶ 124.) At 7:17 p.m., officers directed the Central Communications Center to contact 911. (Compl. ¶ 125.) A minute later, deputies moved Mr. Vogelman to the sallyport, awaiting the ambulance. (Compl. ¶ 127.) At 7:30 p.m., paramedics arrived. (Compl. ¶ 131.) Mr. Vogelman went unconscious in the ambulance. (*Id.*) Paramedics tried to revive him in the ambulance, and lifesaving measures were continued in the hospital, although unsuccessful. (*Id.*) Mr. Vogelman passed away on October 5, 2022. (*Id.*) The trauma resulted in nearly a gallon of blood in Mr. Vogelman's chest cavity and stomach. (Compl. ¶ 132.)

Defendant Liberty was a third-party medical contractor from about March 3, 2022 until May 31, 2022, covering the beginning of Mr. Vogelman's custody. (Compl. ¶ 21.) Defendant NaphCare was a third-party contractor from June 1, 2022 onwards, serving as the third-party medical contractor at the time of Mr. Vogelman's death. (Compl. ¶ 22.)

### B.    Procedural Background

Mr. Vogelman passed away on October 5, 2022. (Compl. ¶ 131.) Plaintiffs submitted claims pursuant to the California Government Claims Act. (Compl. ¶¶ 2, 7); *see* Cal. Gov't Code § 900 *et seq*. On February 2, 2024, Plaintiffs filed a complaint in this Court. (ECF No. 1.) On March 21, 2024, Plaintiffs submitted a first amended complaint (ECF No. 4.)

On June 14, 2024, Plaintiffs filed a joint motion to stay proceedings and toll the statute of limitations until the County of San Diego concluded the homicide investigation into Mr. Vogelman's death. (ECF No. 15.) The Court granted the joint motion. (ECF No.

24cv0234

17.) The Court's Order stated: "The statutes of limitations as to the 42 U.S.C. § 1983 claims and any state law claims as provided for in California Code of Civil Procedure section 335.1, are tolled as to the Doe defendants, from the date of this order, until such time as the stay is lifted." (*Id.*)

Upon the homicide investigation's conclusion, Defendants County of San Diego, Gore, and Ray filed a joint motion to lift the stay on November 19, 2024. (ECF No. 18.) The Court lifted the stay. (ECF No. 19.) The Court's Order reinstated the statutes of limitations, which now ran until February 23, 2025. (*Id.*)

Plaintiffs sought early discovery on December 23, 2024. (ECF No. 25.) And Plaintiffs received discovery on February 3 and 5, 2025, as well as on March 10, 2025. (Compl. ¶ 11.)

On February 23, 2025, Plaintiffs moved to file a second amended complaint *nunc pro tunc* to the motion's date. (ECF No. 34.) This Court granted the unopposed request. (ECF Nos. 36, 38.) Plaintiffs accordingly filed the second amended complaint on March 31, 2025, which was considered *nunc pro tunc* for February 23, 2025. (ECF No. 39.) Plaintiffs named Defendants Liberty and NaphCare for the first time in the second amended complaint. (*Id.*)

## II.    LEGAL STANDARD

To state a claim, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8. A motion under Federal Rule of Civil Procedure 12(b)(6) seeks to dismiss a complaint for failure to state a claim upon which relief could be granted. *See* Fed. R. Civ. P. 12.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). As such, the Rule 8 requirement demands "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must allege enough factual content to state a "plausible" claim. *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). To satisfy plausibility, the

24cv0234

plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

When deciding a motion to dismiss, a court may not look beyond the complaint. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Moreover, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

When dismissing a complaint, the court decides whether to grant leave to amend. Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15.

## III.    ANALYSIS

In Part A, the Court discusses the claims against Defendants County of San Diego and its officers. In this section, the Court also discusses federal and state law immunity. In Part B, the Court addresses the claims against Defendants Liberty and NaphCare.

### A.    Claims Against Defendants the County of San Diego and Its Officers

Defendants County of San Diego and its officers move for dismissal arguing that Plaintiffs' complaint asserts legal conclusions and insufficient factual allegations. (ECF No. 46.) Plaintiffs maintain that they state a plausible claim for relief. (ECF No. 55.)

Plaintiffs allege nine causes of action against County Defendants: (1) a failure-to-protect claim for the April 12, 2022, incident (42 U.S.C. § 1983); (2) a failure-to-protect claim for the August 3, 2022, incident (42 U.S.C. § 1983); (3) a failure-to-protect claim for the October 5, 2022, incident (42 U.S.C. § 1983); (4) *Monell* liability (42 U.S.C. § 1983); (5) Supervisory liability (42 U.S.C. § 1983); (6) Right of Association (42 U.S.C. § 1983); (7) Wrongful Death (Cal. Civ. Code § 377.60); (8) Bane Act (Cal. Civ. Code § 52.1); and (9) Negligence. (Compl.)[2]

---

[2] County Defendants seek to dismiss claims against remaining Doe Defendants as insufficiently pled. (Mot. County 12:3, ECF No. 46.) As explained in this Order, the complaint states a plausible claim

The Court addresses the nine claims in turn.[3]

### 1. First Cause of Action: Failure to Protect, April 12, 2022

First, Plaintiff The Estate of Raymond Vogelman alleges deliberate indifference to Mr. Vogelman's security and safety needs as to the altercation on April 12, 2022, in violation of the Fourteenth Amendment under 42 U.S.C. § 1983. Plaintiffs bring this claim against Defendants Julian, Ramirez, Pena, Doe 3, and Does 29-31. (Compl. ¶ 215.)

"Prison officials have a duty to protect prisoners from violence at the hands of other prisoners because corrections officers have stripped the inmates of virtually every means of self-protection and foreclosed their access to outside aid." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation modified)). This due process protection also applies to pretrial detainees "who ha[ve] not been convicted of any crime[.]" *Id*. A court analyzes a pretrial detainee's right to be free from violence from other inmates by relying on the following elements:

(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

(2) Those conditions put the plaintiff at substantial risk of suffering serious harm;

(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

---

for relief. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (explaining that, where the identity of the alleged defendant is not known before filing a complaint, "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds"). The Court thus denies County Defendants' request without prejudice. In the event Plaintiffs substitute in a Doe Defendant, the Court will address the issue of whether substitution is proper. And the Court notes that Plaintiffs shall not add any new claims or parties without leave of Court, as stated at the end of this Order.

[3] Although not every cause of action is brought by Plaintiffs jointly, the Court refers to Plaintiffs in the plural for simplicity and consistency throughout the Order. But the Court identifies the specific Plaintiff making the allegation at the outset of each section.

24cv0234

(4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1071 (noting that "[w]ith respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case" (citation omitted)).

Here, Plaintiffs allege that Defendants Julian, Ramirez, and Doe 3 failed to conduct proper cell checks. (Compl. ¶ 222.) Moreover, Plaintiffs allege that medical personnel Pena and Does 29-31 were aware of Mr. Vogelman's severe mental health issues and vulnerabilities and failed to communicate critical information to the Sheriff Department's employees. (Compl. ¶¶ 219–21.) For example, Plaintiffs allege that "Mr. Vogelman believed people were hunting him down to kill him and suffered homicidal thoughts." (Compl. ¶ 53.)

The Court finds that Plaintiffs plausibly allege deliberate indifference by pleading that named Defendants knew Mr. Vogelman was a danger to himself, especially around other inmates, and did not separate him or conduct varied cell checks. *See, e.g.*, *Suarez v. Cnty. of San Diego*, No. 3:20-cv-00456-WQH-BGS, 2021 WL 615047, at *6 (S.D. Cal. Feb. 16, 2021) (finding the plaintiff plausibly alleges a claim of deliberate indifference given that the defendant "made an intentional decision not to conduct a suicide risk assessment, not to flag the plaintiff as a self-harm risk, and not to recommend housing in a safety cell with restraints" (citation modified)).

Thus, drawing all reasonable inferences from the facts alleged in Plaintiffs' favor, Plaintiffs plausibly allege that named Defendants acted with deliberate indifference, failing to protect a pretrial detainee. Accordingly, County Defendants' motion to dismiss Plaintiffs' Fourteenth Amendment claim for failure to protect as to the April 12, 2022, incident is denied.

### 2. Second Cause of Action: Failure to Protect, August 3, 2022

Second, Plaintiff The Estate of Raymond Vogelman alleges deliberate indifference to Mr. Vogelman's security and safety needs as to the attack on August 3, 2022, in violation of the Fourteenth Amendment under 42 U.S.C. § 1983. Plaintiffs bring this claim against

24cv0234

Defendants Vickers, Do, Infante Martin, McIntire, Guzman, Boorman, Pena, Doe 5, Does 14-17, and Does 29-31. (Compl. ¶ 227.) The same four-part objective deliberate indifference legal standard—articulated in Section (III)(A)(1)—applies.

Here, Plaintiffs make the following allegations: (a) Defendants Vickers and Doe 5 failed to properly classify or house Mr. Vogelman, (Compl. ¶ 235); (b) Defendants Do, Infante Martin, and McIntire served as deputies in housing 1A, failed to conduct a proper cell check, failed to address or report violence in housing 1A, failed to safeguard threats to Mr. Vogelman's safety despite knowledge of danger, and—especially regarding Defendant Do—took no further action to ensure Mr. Vogelman remained outside of housing 1A, (Compl. ¶ 238); (c) Defendants Guzman and Boorman were supervisors in housing 1A and failed to conduct proper cell checks, (Compl. ¶ 238); (d) Classification sergeants or lieutenants Does 14-17 failed to properly classify and house Mr. Vogelman, (Compl. ¶ 236); and (e) Medical personnel Pena and Does 29-31 did not communicate information to reclassify Mr. Vogelman, (Compl. ¶¶ 233–34).

As relevant, Plaintiffs' complaint alleges that Mr. Vogelman received a "Keep Separate" designation after the April 12, 2022 incident, which was entered into JIMS. (Compl. ¶ 65.) And Defendant Vickers received an email notifying him of the April incident. (Compl. ¶ 66.)

Plaintiffs further make allegations about housing 1A. First, Plaintiffs allege that the module's structure allows beatings to occur without immediate notifications to the deputies. (Compl. ¶ 74.) For example, Plaintiffs allege that the beds' stacking, which created blind spots from the hallway, and the cameras' positioning outside the cells, which captured only portions of the room, facilitated concealment of attacks. (*Id.*) Next, Plaintiffs allege that housing 1A was known to be dangerous, alleging several fights that occurred leading to lockdowns. (Compl. ¶¶ 75–77, 106, 111.) Third, Plaintiffs allege that officers failed to conduct cell checks at random intervals, allowing assaults to be timed around a predictable sixty-minute cell check. (Compl. ¶ 108.) Finally, Plaintiffs allege that County Defendants housed individuals with serious mental health issues together, such as mentally

24cv0234

unstable inmate J-Cat, which fostered dangerous situations. (Compl. ¶¶ 112–13); *see, e.g., Castro*, 833 F.3d at 1067 (noting that the "jury found that [the defendants] understood that placing [the plaintiff] in a cell with a combative inmate, when the cell had no audio or video surveillance and only occasional monitoring, could lead to serious violence against [the plaintiff]").[4]

Drawing all reasonable inferences from the facts alleged in Plaintiffs' favor, Plaintiffs plausibly allege that named Defendants failed to protect Mr. Vogelman as regard to the August 3, 2022, incident. Accordingly, County Defendants' motion to dismiss Plaintiffs' Fourteenth Amendment claim for failure to protect regarding the August 3, 2022, incident is denied.

### 3.    Third Cause of Action: Failure to Protect, Failure to Provide Adequate Medical Care, October 5, 2022

Next, Plaintiff The Estate of Raymond Vogelman alleges deliberate indifference to Mr. Vogelman's security and safety needs resulting in death on October 5, 2022, in violation of the Fourteenth Amendment under 42 U.S.C. § 1983. Plaintiffs bring this claim against Defendants LaBranche, Preciado, Mazzola, Tillman, Boorman, Rapp, Pena, Doe 10, Does 14-17, and Does 29-31. (Compl. ¶ 242.)

In addition to the failure to protect claim—for which the same four-part objective deliberate indifference standard articulated in Section (III)(A)(1) applies—Plaintiffs also assert a failure to provide adequate medical care in violation of due process rights. The analysis for adequate medical care follows the same four-part objective deliberate indifference standard. *See Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018) ("[W]e hold that claims for violations of the right to adequate medical care brought

---

[4] In a comparable case involving a deceased pretrial detainee, a court found that the plaintiff plausibly alleged a deliberate indifference claim; specifically, the court relied on allegations that the defendants "were aware that Mr. Ruis had mental illnesses, had violent propensities, and had been segregated from other inmates because of his violent conduct and expressions," as well as allegations that the deceased was "a vulnerable inmate, suffered from mental illness, and was targeted and threatened by other inmates." *Est. of Yates by & through Yates v. Cnty. of San Diego*, No. 25-cv-410 W (MMP), 2025 WL 2446552, at *4 (S.D. Cal. Aug. 21, 2025).

24cv0234

by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard." (citation omitted)); *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 669 (9th Cir. 2021).

Here, Plaintiffs put forth the following allegations: (a) Defendants LaBranche, Preciado, and Mazzola served as deputies in housing 1A and failed to conduct proper cell checks, failed to report repeated violent incidents in housing 1A, and failed to take reasonable steps to safeguard Mr. Vogelman, (Compl. ¶¶ 253–54); (b) Defendants Rapp and Doe 10 did not reclassify Mr. Vogelman, (Compl. ¶ 251); (c) Classification sergeants or lieutenants Does 14-17 failed to properly classify and house Mr. Vogelman, (Compl. ¶ 252.); (d) Medical personnel Pena and Does 29-31 knew about previous attacks and the clearance from EOH yet did nothing, (Compl. ¶¶ 248–50); and (e) Defendants Mazzola, Preciado, LaBranche, Tillman, and Boorman failed to provide medical assistance, specifically by calling 911 emergency help twelve minutes after witnessing Mr. Vogelman's condition, (Compl. ¶ 256).

Plaintiffs further allege that named Defendants were aware of two previous assaults on Mr. Vogelman, one of which took place in housing 1A. (Compl. ¶¶ 245–46.) After the second incident, in August, Defendant Do commented in his incident report that Mr. Vogelman "should not be placed back into [housing 1A] upon returning from the hospital." (Compl. ¶ 90.) And Plaintiffs allege there was no sign that the individuals from the August incident were removed from housing 1A. (Compl. ¶ 104); *see Scalia v. Cnty. of Kern*, 308 F. Supp. 3d 1064, 1071, 1077 (E.D. Cal. 2018) (denying motion to dismiss deliberate indifference claim for inadequate medical care where decedent fell from a top bunk and upon return from the hospital again fell from the bunk, and the defendants placed the plaintiff there "without any follow-up plan to monitor her, without seeking the opinion of a physician, and without conducting any tests").

Plaintiffs further allege a twelve-minute interval between when officers found Mr. Vogelman and when they called 911. (Compl. ¶ 256.) Starting at 7:05 p.m., officers saw Mr. Vogelman with a "blood-soaked towel on his face" in housing 1A, (Compl. ¶ 119);

- 11 -

"coughing up blood" while lying on the floor, (Compl. ¶ 121); collapsing when trying to stand up, (Compl. ¶ 123); and "gasping" and "struggling for air" while on a gurney, (Compl. ¶ 124). At 7:17 p.m., the officers called 911. (Compl. ¶ 125.)

When Mr. Vogelman was on the ground coughing up blood, one officer commented: "He didn't look good but I didn't have any gloves on and there was blood on him and I'm like- I don't wanna touch him 'cause I don't what [sic] he has. I don't want it." (Compl. ¶ 128.) Plaintiffs allege the officer also stated: "I knew I didn't have gloves and I didn't want that blood on me without protection, until it was like nobody was doing anything, not that nobody was doing anything, but nobody had the presence of mind to do it." (Compl. ¶ 130.)

Thus, drawing all reasonable inferences from the facts alleged in Plaintiffs' favor, Plaintiffs plausibly allege that named Defendants failed to protect and provide adequate medical assistance to Mr. Vogelman as a pretrial detainee. Accordingly, County Defendants' motion to dismiss Plaintiffs' Fourteenth Amendment claim pertaining to the October 5, 2022, incident is denied.

### 4.    Fourth Cause of Action: *Monell* Liability

Fourth, Plaintiff The Estate of Raymond Vogelman alleges *Monell* liability under 42 U.S.C. § 1983. Plaintiffs assert this claim against the County of San Diego, Liberty, and NaphCare. (Compl. ¶ 257.)

Included within § 1983's definition of "persons," a municipality can be liable for constitutional violations—so-called *Monell* liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Importantly, one cannot sue the county on a theory of *respondeat superior*. *Id*. at 691. Instead, *Monell* liability is limited to suits for constitutional deprivations caused by the county's "officially adopted" policy statement, ordinance, regulation, or decision, or the county's unofficial but entrenched "custom [or practice]." *Id*. at 690–91, 694. In short, a county is held liable when the execution of a government policy or custom inflicts the constitutional injury. *Id*. at 694.

Failure to train employees can be considered a county's policy or custom where the inadequacy evidences "deliberate indifference." *City of Canton, Ohio v. Harris*, 489 U.S.

24cv0234

378, 389 (1989). Deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). Notice, through a pattern of similar constitutional violations by untrained employees, supports a deliberate decision. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Although a pattern is "ordinarily necessary" to demonstrate deliberate indifference, *id*. at 62, a failure to train can obviously lead to constitutional violations in a "narrow range of circumstances," *id*. at 63 (citation omitted). For example, taking into consideration "the duties assigned to specific officers," when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," a county's training can reflect deliberate indifference. *City of Canton*, 489 U.S. at 390.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. The unsatisfactory training of a particular officer cannot support *Monell* liability. *City of Canton*, 489 U.S. at 390–91. Moreover, a particular officer's mistakes will not suffice. *Id*. at 391.

The county can also be held liable, regardless of a formal policy or custom, when the officer causing the underlying constitutional violation has "final policymaking authority" with "respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Effectively, the county has sanctioned that officer's actions as de facto "final policy." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988). As an extension of this reasoning, the county can be held liable for any actions approved by those with final policymaking authority. *Praprotnik*, 485 U.S. at 127. Under this so-called "ratification" theory, a plaintiff must show that the "authorized policymakers approve a subordinate's decision and the basis for it." *Id*. In other words, "a plaintiff must show that the policy maker approved of the subordinate's act" and not just that the policymaker had knowledge of it. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).

Here, Plaintiffs assert nine theories of *Monell* liability against Defendant County of San Diego: (1) failure to classify Mr. Vogelman properly for housing consistent with his

24cv0234

safety and security needs; (2) failure to properly designate Mr. Vogelman for custody in a safe area; (3) failure to monitor for danger; (4) failure to properly conduct counts and safety checks; (5) failure to place Mr. Vogelman in safe housing, resulting in multiple attacks and physical injury; (6) failure to lodge Mr. Vogelman in a safe area even after two separate violent attacks; (7) failure to conduct adequate video monitoring; (8) failure to respond timely to prevent attacks on Mr. Vogelman; and (9) failure to render timely and adequate medical care. (Compl. ¶ 197.)

To support *Monell* liability, Plaintiffs make several allegations, including:

- o The County had a history of transferring gravely mentally ill patients to GBDF from SDCJ despite the fact that GBDF has no Psychiatric Stabilization Unit ("PSU") and no resources to treat patients with acute psychosis. (Compl. ¶ 62.)

- o Plaintiffs highlight investigatory articles regarding jail deaths in San Diego County from newspapers Citybeat and Union Tribune. (Compl. ¶¶ 134, 136–141.)

- o Plaintiffs allege that San Diego County jails have experienced sixty inmate deaths in the span of five years. (Compl. ¶ 134.)

- o Plaintiffs discuss a report from the California State Auditor. (Compl. ¶¶ 143–153.) The audit included several findings, such as: "The high rate of deaths in San Diego County's jails [as] compared to other counties raises concerns about underlying systematic issues with the Sheriff's Department's policies and practices." (Compl. ¶ 146.)

- o And the audit espoused similar findings regarding medical attention. (Compl. ¶¶ 154–157, 269–78.) Plaintiffs additionally allege several past cases to support the history of such practice. (Compl. ¶ 158.)

- o Plaintiffs allege a custom of improperly classifying vulnerable people, specifically a lack of a policy or training on who has responsibility of advising a Jail Population Management Unit ("JPMU") deputy. (Compl. ¶¶ 166–67,

- 14 -

24cv0234

279–91.) Plaintiffs allege several past cases to support a custom or practice on this theory. (Compl. ¶¶ 170–172.)

o Plaintiffs allege a custom of failing to monitor vulnerable detainees, citing several past cases. (Compl. ¶ 175.)

o Plaintiffs allege a custom of failing to perform adequate safety checks. (Compl. ¶¶ 177, 292–96.) Plaintiffs allege several other custody deaths related to improper cell checks. (Compl. ¶¶ 192–94.)

Drawing all reasonable inferences from the facts alleged in Plaintiffs' favor, Plaintiffs plausibly allege a *Monell* claim under custom and failure to train theories. *See County of Kern*, 308 F.Supp.3d at 1079 (finding that the plaintiff sufficiently alleged "policy failures by [the County Hospital Association] that are more than unspecific recitations of the cause of action").

Regarding a ratification theory of liability, however, Plaintiffs do not identify a final policymaking authority and instead claim that the County of San Diego had an official policy of acquiescence in wrongful conduct. Because of a lack of factual allegations, the Court grants County Defendants' motion to dismiss with leave to amend regarding the ratification theory of *Monell* liability.

### 5. Fifth Cause of Action: Supervisory Liability

Fifth, Plaintiff The Estate of Raymond Vogelman alleges failure to train, supervise, and discipline under 42 U.S.C. § 1983. Plaintiffs allege this claim against Defendants Ray, Gore, Zelt, Boorman, Ceballos, Gardenhire, Herrera, Guzman, Supervisory Does 20-21, and Does 24-27. (Compl. ¶ 304.)

"[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885

24cv0234

F.2d 642, 646 (9th Cir. 1989). The causal connection can include the supervisor's "own culpable action or inaction in the training, supervision, or control of his subordinates; his acquiescence in the constitutional deprivation; or conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (citation modified). "The requisite causal connection can be established . . . by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207–08 (citations omitted).

Here, Plaintiffs put forth the following allegations: (a) Defendants Ray and Gore,[5] along with all supervisory Defendants, ignored the warnings from the San Diego Citizens' Law Enforcement Review Board ("CLERB") audit, (Compl. ¶ 316); (b) Defendants Zelt, Boorman, Ceballos, Gardenhire, Herrera, Guzman, Does 20-21, and Does 24-27 did not reclassify Mr. Vogelman and did not conduct proper cell checks, (Compl. ¶¶ 311, 315–16); (c) Defendant Zelt served as the watch commander on the date of Mr. Vogelman's death, (Compl. ¶¶ 312–13); (d) Defendants Boorman and Guzman served as supervisors on August 3, 2022, held responsibility for subordinates, personally conducted safety checks, failed to supervise subordinates on the date of Mr. Vogelman's death, and failed to supervise adequate medical care on the date of Mr. Vogelman's death, (Compl. ¶¶ 305, 309–10, 313–14); (e) Defendant Herrera served as a supervisor preceding the incidents on the date of Mr. Vogelman's death, (Compl. ¶ 309); and (f) All Defendants failed to ensure

---

[5] County Defendants argue that Defendant Gore should be dismissed from the lawsuit because he retired from the Sheriff department before the events in question unfolded. (Mot. County 14:7–9, 26:19–23.) Plaintiffs disagree, alleging that the policies in effect at Mr. Vogelman's death were established and implemented by Defendant Gore. (Compl. ¶¶ 259–61); *Sanders v. Los Angeles County*, No. cv 15-00907 AG (RAO), 2017 WL 8751693 (C.D. Cal. Dec. 27, 2017), report and recommendation adopted, No. CV 15-00907 AG (RAO), 2018 WL 1626252 (C.D. Cal. Mar. 30, 2018) (finding that the plaintiff has sufficiently alleged a supervisory liability claim where he pleaded that "Defendant Baca set in action a series of acts or failed to terminate a series of acts which led to the placement of improperly trained deputies on the mental health floor"). The Court denies Defendant Gore's dismissal at the pleading stage.

24cv0234

subordinates conducted random cell checks, (Compl. ¶ 315). Plaintiffs allege supervisory positions for the Defendants. (Compl. ¶ 13–45.)

These allegations fail to state a plausible claim. *See Graves v. California Dep't of Corr. & Rehab.*, No. EDCV 17-1086 JGB (SPx), 2019 WL 8168060, at *8 (C.D. Cal. Nov. 14, 2019) (finding as insufficiently pled the plaintiff's allegations that, on the night of decedent's death, "Tang was on duty, and responded too late to save [the decedent]," because "it is not clear that [supervisors] Hughes or Whitmore were aware of a policy of unresponsiveness to specific threats but failed to provide a remedy").

Plaintiffs allege that some Defendants knew of two prior deaths, (Compl. ¶ 305), or knew of Mr. Vogelman's emergency room visits, (Compl. ¶ 306), but these pleadings are insufficient to establish supervisory liability against each named Defendant. *Cf. Starr*, 652 F.3d at 1216 (denying motion to dismiss supervisory liability claim where the plaintiff alleged that the defendant was given "notice" of inmate deaths as well as "reports of systematic problems in the county jails under [the defendant's] supervision that have resulted in these deaths and injuries").

Thus, drawing all reasonable inferences from the facts alleged in Plaintiffs' favor, Plaintiffs fail to plausibly allege that named Defendants acted with deliberate indifference in their supervisory capacity. Accordingly, County Defendants' motion to dismiss Plaintiffs' claim for supervisory liability is granted with leave to amend.

### 6. Sixth Cause of Action: Right of Association

Sixth, Plaintiff J. Leslie Crawford alleges a violation of her right of association in violation of 42 U.S.C. § 1983. Plaintiffs bring this claim against all Defendants except the County of San Diego. (Compl. ¶ 321.)

"Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). "[O]nly official conduct that 'shocks the conscience' is cognizable as a due process violation." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir.

24cv0234

2008) (quotation omitted). "A prison official's deliberately indifferent conduct will generally 'shock the conscience' so long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Lemire*, 726 F.3d at 1075.

Here, Plaintiffs allege Defendants' deliberate indifference, as discussed in Sections (III)(A)(1), (2), (3), and (4). (Compl. ¶¶ 322–25); *see Est. of Sandra Vela v. Cnty. of Monterey*, No. 16-CV-02375-BLF, 2016 WL 4678300, at *5 (N.D. Cal. Sept. 7, 2016) (denying motion to dismiss right of association claim where the deliberate indifference allegations were adequate).

Thus, drawing all reasonable inferences from the facts alleged in Plaintiffs' favor, Plaintiffs plausibly allege that Defendants in Sections (III)(A)(1), (2), and (3), deprived Mr. Vogelman's mother of her association right. Accordingly, County Defendants' motion to dismiss Plaintiffs' Fourteenth Amendment claim for the right of association is denied.

### 7.    Seventh Cause of Action: Wrongful Death

Seventh, Plaintiff J. Leslie Crawford alleges wrongful death under California law. Cal. Civ. Proc. Code § 377.60. Plaintiffs bring this claim against all Defendants. (Compl. ¶ 328.)

Section 377.60 creates "a cause of action for the death of a person caused by the wrongful act or neglect of another." Cal. Civ. P. Code § 377.60. Thus, the elements of a wrongful death claim are: (1) a wrongful act or neglect, (2) that causes, (3) the death of another person. *See Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 390 (1999). A wrongful death claim can be based on the defendant's deliberate indifference. *See Villarreal v. Cty. of Monterey*, 254 F. Supp. 3d 1168, 1191 (N.D. Cal. 2017) (stating that "§ 1983 […] can form the basis of a claim for wrongful death").

Here, Plaintiffs allege Defendants' deliberate indifference, as discussed in Sections (III)(A)(1), (2), (3), and (4). Further, Plaintiffs allege that each Defendant owed a duty of care. (Compl. ¶¶ 331–36.) And Plaintiffs allege that the County of San Diego was vicariously liable through California Government Code § 815.2. (Compl. ¶ 337.)

24cv0234

Thus, drawing all reasonable inferences from the facts alleged in Plaintiffs' favor, Plaintiffs plausibly allege that Defendants in Sections (III)(A)(1), (2), (3), and (4) violated California statute § 377.60. Accordingly, County Defendants' motion to dismiss Plaintiffs' wrongful death claim is denied.

### 8.    Eighth Cause of Action: Bane Act

Eighth, Plaintiff The Estate of Raymond Vogelman alleges violation of California Civil Code § 52.1, also known as the Bane Act. Plaintiffs assert this claim against all Defendants. (Compl. ¶ 340.)

The Tom Bane Civil Rights Act states, in relevant parts: "If a person […] interferes by threat, intimidation, or coercion, […] with the exercise or enjoyment by any individual […] of rights secured by the Constitution or laws of the United States," that individual may bring a civil action for damages. Cal. Civ. Code §§ 52.1(b), (c). Thus, to plead a Bane Act claim, a plaintiff must show (1) interference with or attempted interference with a state or federal, constitutional or legal right, and that (2) the interference or attempted interference was by threats, intimidation, or coercion. *See Sanchez v. Cnty. of Los Angeles*, No. cv 20-1146 DSF (PVCx), 2020 WL 9074714, at *9 (C.D. Cal. Apr. 28, 2020).

"[T]he Bane Act does not require the 'threat, intimidation, or coercion' element of the claim to be transactionally independent from the constitutional violation alleged." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 800 (2017)). If a plaintiff adequately pleads deliberate indifference, then he has alleged the threat, intimidation, or coercion required for a Bane Act claim. *See, e.g.*, *M.H. v. Cnty. of Alameda*, 90 F. Supp. 3d 889, 898 (N.D. Cal. 2013) (treating deliberate indifference as intentional conduct); *see also Cnty. of Kern*, 308 F. Supp. 3d at 1084 (treating deliberate indifference as a coercive act).

Here, Plaintiffs enumerate three rights protected by the U.S. Constitution, the California Constitution, and California law. (Compl. ¶ 342.) Plaintiffs also include the alleged deliberate indifference constitutional violations. (Compl. ¶¶ 343, 346.) Plaintiffs further list alleged conduct constituting threat, intimidation, or coercion. (Compl. ¶¶ 344–

24cv0234

45.) Finally, Plaintiffs allege that the County of San Diego is vicariously liable pursuant to California Government Code § 815.2. (Compl. ¶¶ 347, 349.)

Thus, drawing all reasonable inferences from the facts alleged in Plaintiffs' favor, Plaintiffs plausibly allege Bane Act violations against Defendants in Sections (III)(A)(1), (2), (3), and (4).[6] Accordingly, County Defendants' motion to dismiss Plaintiffs' state law claim for Bane Act violations is denied.

### 9. Ninth Cause of Action: Negligence

Finally, Plaintiff The Estate of Raymond Vogelman alleges a negligence survival claim under California Code of Civil Procedure § 377.30. Plaintiffs allege this claim against all Defendants. (Compl. ¶ 351.)

To succeed on a negligence claim, a plaintiff must show: "(1) the defendant had a legal duty to use due care, (2) the defendant breached such duty, and (3) the breach was the proximate or legal cause of the resulting injury." *Ladd v. Cnty. of San Mateo*, 12 Cal. 4th 913, 917 (1996).

Here, Plaintiffs allege that each Defendant owed a duty of care. (Compl. ¶¶ 354, 357, 361.) Given that Plaintiffs have sufficiently alleged objective deliberate indifference in Sections (III)(A)(1), (2), (3), and (4), Plaintiffs have sufficiently alleged a breach of duty of care for purposes of negligence liability. (Compl. ¶ 353); *see Castro*, 833 F.3d at 1071 (stating that a deliberate indifference claim requires "more than negligence but less than

---

[6] Defendants argue that the Bane Act and negligence state law claims are untimely with regard to the April 12, 2022, and August 3, 2022, incidents according to the administrative filing deadline. *See* Cal. Gov't Code § 911.2. Under § 911.2(a), a plaintiff must file a claim for damages against the government within six months. On March 30, 2023, Plaintiff timely filed an administrative claim for the October 5, 2022, incident but untimely filed a claim for the April and August incidents. (Compl. ¶ 7.) Plaintiffs argue timeliness under California's "continuing violation" doctrine. *Atayde v. Napa State Hosp.*, No. 1:16-CV-00398-DAD-SAB, 2016 WL 4943959, at *8 (E.D. Cal. Sept. 16, 2016); *see Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013) ("The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them."). Plaintiffs' complaint alleges that "the claims were timely because the misconduct of the County defendants in failing to protect Mr. Vogelman by properly classifying him and placing him in protective custody continued each day from March of 2022 until the day of Mr. Vogelman's death." (Compl. ¶ 8.) Accordingly, Plaintiffs plausibly allege a continuing violation at this stage of litigation.

24cv0234

subjective intent"). Although Plaintiffs did not sufficiently allege deliberate indifference against the supervisory defendants, Plaintiffs sufficiently pleaded a negligence claim against them. (Compl. ¶¶ 356–60); *see Tyler v. Cnty. of Los Angeles*, No. LA cv18-01816 JAK (ADSx), 2019 WL 13032149, at *17 (C.D. Cal. June 10, 2019) (finding the plaintiff sufficiently alleged negligent supervision by alleging, in part, that the deceased "was not provided safe housing, including by being housed in the general population").

Thus, drawing all reasonable inferences from the facts alleged in Plaintiffs' favor, Plaintiffs plausibly allege negligence against Defendants. Accordingly, Defendants' motion to dismiss Plaintiffs' negligence claim is denied.

### 10. Immunity

Finally, the Court addresses County Defendants' federal and state immunity arguments.

### a. Qualified Immunity

County Defendants argue they are immune from federal claims under the qualified immunity defense.

Qualified immunity protects officers from going to trial on "insubstantial lawsuits." *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). The Supreme Court made the immunity "qualified" to carve out situations where a "reasonable [officer] would have known" about a constitutional right. *Id.* at 818–19.

To determine whether an officer should receive qualified immunity, a court considers (1) "whether a constitutional right would have been violated on the facts alleged" and (2) "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). A court can take these questions in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Moreover, a court can decide to skip the constitutional question. *Id.*

Although Defendants can raise qualified immunity in a motion to dismiss, the issue is generally better addressed at summary judgment. *See Wong v. United States*, 373 F.3d 952, 956–57 (9th Cir. 2004); *NAACP of San Jose/Silicon Valley v. City of San Jose*, 562 F. Supp. 3d 382, 395 (N.D. Cal. 2021) (noting that addressing qualified immunity at the

24cv0234

motion to dismiss stage "raises special problems of legal decision making" (quotation omitted)). At the motion to dismiss stage, a court can dismiss on qualified immunity grounds if it can determine, "based on the complaint itself," that qualified immunity applies. *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).

Here, County Defendants' motion to dismiss states that qualified immunity applies because there has been no constitutional violation, and the Court therefore can skip the clearly established analysis. (Mot. County 18:4–5, ECF No. 46.) But Plaintiffs have plausibly stated a federal claim in Sections (III)(A)(1), (2), (3), and (4), and the undeveloped facts cannot support a clearly established inquiry based on the complaint itself. *See NAACP of San Jose/Silicon Valley*, 562 F. Supp. at 396 (declining to address qualified immunity at the motion to dismiss stage given that the "qualified immunity analysis often turns on the specific facts of each alleged violation"). Accordingly, the Court denies qualified immunity at this stage of the proceedings.

### b.      State Law Immunity

County Defendants next state that the County of San Diego is entitled to immunity under California Government Code § 844.6(a). This provision states, in relevant part: "except as provided in […] § 845.6 [...] a public entity is not liable" for "(1) An injury proximately caused by any prisoner," or "(2) An injury to any prisoner." Cal. Gov. Code §§ 844.6(a)(1), (2).

Plaintiffs contend that the § 845.6 exception applies, depriving the County of San Diego of immunity. Section 845.6 states that, although generally "[n]either a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody," such entities or individuals will be "liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Cal. Gov. Code § 845.6.

Liability of public entities and public employees under § 845.6 is limited to serious and obvious medical conditions requiring immediate care. *See Lucas v. Cnty. of Los*

- 22 -

24cv0234

*Angeles*, 47 Cal. App. 4th 277, 288 (1996). Section 845.6 is "very narrowly written to authorize a cause of action against a public entity for its employees' failure to summon immediate medical care only, not for certain employee's malpractice in providing that care." *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1070 (2013) (citation modified).

Here, Plaintiffs have stated a claim that immediate medical care was necessary: officers saw Mr. Vogelman with a "blood-soaked towel on his face" in housing 1A, (Compl. ¶ 119); "coughing up blood" while lying on the floor, (Compl. ¶ 121); collapsing when trying to stand up, (Compl. ¶ 123); and "gasping" and "struggling for air" while on a gurney, (Compl. ¶ 124); *see, e.g.*, *Sandoval*, 985 F.3d at 670, 662 (stating that "[s]weating and being so disoriented that officers observe and comment about it are not everyday conditions" in a case where the plaintiff alleges staff "failed to promptly summon paramedics").

Reading the alleged facts in the light most favorable to Plaintiffs, the Court finds Plaintiffs plausibly allege that Defendants had reason to know that Mr. Vogelman required immediate medical care. Thus, Defendants are not entitled to § 844.6(a) immunity at this stage of litigation.

Defendants also assert immunity from state law supervisory liability under California Government Code § 820.8. (Mot. County 28:27–29:1, 32:17–23.) This provision states: "[A] public employee is not liable for an injury caused by the act or omission of another person," but a public employee is liable "for injury proximately caused by his own negligent or wrongful act or omission." Cal. Gov. Code § 820.8. Here, the parties seem to discuss § 820.8 immunity as regard to Defendants Gore and Ray only. (Opp'n County 25:6–13, ECF No. 55.) Given that the Court dismissed supervisory liability claims, there are no allegations of vicarious liability for a supervisor at this stage.

**B.    Claims Against Defendants Liberty and NaphCare**

Healthcare contractors Defendants Liberty and NaphCare also move for dismissal. (ECF Nos. 66, 75.) The parties disagree about the timeliness of the claims given that

24cv0234

Plaintiffs named Healthcare Defendants for the first time in the second amended complaint. Specifically, Healthcare Defendants argue that the claims against them are time barred under the statute of limitations. Further, Defendant NaphCare argues that the claims against it should be dismissed for failing to state a claim. Plaintiffs respond that the statute of limitations has been tolled or, in the alternative, the relation back doctrine applies. Plaintiffs further maintain that they state a plausible claim for relief. (ECF No. 80.)

The Court begins with a discussion of Healthcare Defendants' statutes of limitations defense. Then, the Court addresses Defendant NaphCare's motion to dismiss for failure to state a claim.

### 1. Plaintiffs Timely Filed the Present Action Against Defendants Liberty and NaphCare

Healthcare Defendants move to dismiss Plaintiffs' claims on statute of limitations grounds. A court may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations "only when the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (citation modified). Because the statute of limitations is an affirmative defense, the "defendant has the burden of proving the action is time-barred." *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1020 (C.D. Cal. 2009) (citation omitted).

In this section, the Court discusses the proper statute of limitations and accrual dates, then confirms that the tolling of the statute applies to claims against Healthcare Defendants.

#### a. Statute of Limitations

The Court addresses each claim's proper limitations length.

##### i. 42 U.S.C. § 1983

Plaintiffs bring two claims under 42 U.S.C. § 1983 against Healthcare Defendants. (Compl. ¶¶ 297, 322.) "Section 1983 does not contain its own statute of limitations"; therefore, "federal courts apply the forum state's statute of limitations for personal injury actions[.]" *Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1198 (9th Cir. 2014) (citation modified). In accordance with California law, the statute of limitations for

24cv0234

personal injury claims is two years. *See* Cal. Civ. Proc. Code § 335.1. Thus, a two-year statute of limitations applies.

### ii.    Bane Act

Under the Bane Act, Cal. Civ. Code § 52.1, Plaintiffs allege Healthcare Defendants' direct liability and vicarious liability through Defendant Pena. (Compl. ¶¶ 347, 348.) The Bane Act is "analogous to a federal claim for personal injury under 42 U.S.C. § 1983 which . . . sounds in tort." *Gatto v. County of Sonoma*, 98 Cal. App. 4th 744, 760 (2002). As mentioned above, in accordance with California law, the statute of limitations for personal injury claims is two years. *See* Cal. Civ. Proc. Code § 335.1. Thus, a two-year statute of limitations applies.

### iii.    Wrongful Death

Plaintiffs next bring a state law wrongful death claim, Cal. Civ. Code § 377.60, alleging that Healthcare Defendants are vicariously liable for Defendant Pena's negligence. (Compl. ¶ 338.) Healthcare Defendants urge the Court to apply the statute of limitations under California's Medical Injury Compensation Reform Act ("MICRA"). MICRA applies "[i]n an action for injury or death against a health care provider based upon such person's alleged professional negligence[.]" Cal. Civ. Proc. Code § 340.5.

Plaintiffs argue that MICRA does not apply to the allegations made against Defendant Pena because "[w]hile releasing a pretrial detainee from [Enhanced Observation Housing] and communicating with Classification are within the scope of Pena's obligations under the Sheriff's policies, they were not within the scope of services for which Pena was *licensed*." (Opp'n Healthcare 11:26-12:1, ECF No. 80.) Plaintiffs do not cite to case law to support this proposition, and the Court finds it unpersuasive.

Defendant Pena's alleged negligence was integrally related to his obligations as a medical provider. *See Flores v. Presbyterian Intercommunity Hospital*, 63 Cal. 4th 75, 88 (2016) (discussing how if the alleged negligence is "integrally related to the medical treatment and diagnosis of the patient" then it "implicates a duty that the [medical provider] owes to a patient by virtue of being a health care provider"). Thus, MICRA applies. *See,*

24cv0234

*e.g.*, *Lathrop v. HealthCare Partners Medical Group*, 114 Cal. App. 4th 1412, 1423 (2004) ("Because the vicarious liability of the employer is wholly dependent upon or derived from the liability of the employee, any substantive defense that is available to the employee inures to the benefit of the employer.").

MICRA offers varying limitations periods, stating: "[T]he time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." Cal. Civ. Proc. Code § 340.5. Here, Plaintiffs discovered the injury at the time of Mr. Vogelman's death. Thus, a one-year statute of limitations applies.

### b.    Accrual

The Court addresses the start date for each claim's limitation period.

### i.    42 U.S.C. § 1983

Federal law determines the accrual date of a § 1983 cause of action. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). "[U]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (citation modified). Here, Mr. Vogelman's death is the injury which serves as the basis of the action. The death occurred on October 5, 2022. Thus, the statute of limitations began to run on the date of death.

### ii.    Bane Act

Given that the Bane Act claim is dependent on the constitutional violations discussed above, the statute of limitations began to run on October 5, 2022.

### iii.    Wrongful Death

Regarding the wrongful death claim, the parties disagree about the accrual date. To the extent MICRA applies, Plaintiffs argue that the accrual date is not October 5, 2022, but rather February 3, 2025—the date Plaintiffs received discovery. In support, Plaintiffs rely on California's "discovery rule." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397, 404–05

24cv0234

(1999). The discovery rule provides an exception to the general accrual rule and "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). A "plaintiff whose complaint shows on its face that [the] claim would be barred," yet seeks to invoke the discovery rule, "must specifically plead facts" to invoke the rule. *Id.* at 808 (citation omitted). "In order to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." *Id.* at 809; *see also Landers v. Ford Motor Co.*, No. 23-55552, 2024 WL 489169, at *1–2 (9th Cir. Feb. 8, 2024).

Here, Plaintiffs' wrongful death claims are time-barred on the face of the complaint. And Plaintiffs have not specifically alleged an inability to conduct earlier discovery in accordance with *Fox*.

Moreover, Plaintiffs' opposition brief does not consistently argue a February 3, 2025, accrual start date. (*See, e.g.*, Opp'n Healthcare 11:1–2.) Further, the Court is disinclined to find a "discovery" date of February 3, 2025, given that Plaintiffs' first amended complaint—filed March 21, 2024—alleges a claim against medical personnel and their contractors. (Compl. ¶¶ 21, 23); *Fox*, 35 Cal. 4th at 807 (citation modified) ("A plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements."). Also, prior to February 3, 2025, Plaintiffs apparently had the names of the medical care providers that appeared on Mr. Vogelman's medical records. (Opp'n Healthcare 18:2–5.) Accordingly, the Court finds Plaintiffs have inadequately alleged application of the discovery rule and thus the accrual date on the face of the complaint is October 5, 2022.

### c.    Tolling

Plaintiffs argue that given the tolling of the statute of limitations, the claims against Healthcare Defendants are still timely. (Opp'n Healthcare 12:6–10.) Healthcare Defendants argue that the tolling does not apply to them for several reasons. First,

Healthcare Defendants argue that the Court tolled the statute of limitations as to "Doe defendants" only, and Healthcare Defendants were not substituted in for Doe defendants in the second amended complaint. (Mot. NaphCare 10:17–24, ECF No. 77.) Second, Healthcare Defendants argue that the County of San Diego had no standing to agree to toll the statute of limitations on their behalf. (Mot. NaphCare 10:25-11:3.) Third, Healthcare Defendants argue that equitable tolling does not apply. (Mot. NaphCare 11:4–15.)

None of Healthcare Defendants' arguments are persuasive. The Court exercised its inherent authority to stay the case. (ECF No. 17); *see Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Given the delay in discovery due to the ongoing homicide investigation, the Court appropriately exercised its inherent authority to toll the statute of limitations in the interest of justice. *See, e.g.*, *Smith v. Davis*, 953 F.3d 582, 592 (9th Cir. 2020) ("The authority by which courts equitably toll statutes of limitations comes not from any statute but instead from our exercise of '[t]he judicial Power . . . extend[ing] to all Cases, in Law and Equity, arising under th[e] Constitution, [and] the Laws of the United States.' U.S. Const. Art. III, § 2."); *cf. Brown v. Davis*, 482 F. Supp. 3d 1049, 1059 (E.D. Cal. 2020) (granting equitable tolling given impact of "ongoing COVID-19 pandemic" which petitioner argued had and would continue "to impede record assembly and review, lay and expert discovery, claim investigation and development, and preparation of a complete federal habeas petition"). The decision did not rest on a contractual agreement between the at-present parties.

Accordingly, given that the Court tolled the statute of limitations, Plaintiffs timely filed their § 1983 and Bane Act claims against Healthcare Defendants; but Plaintiffs' wrongful death claim is untimely on the face of the complaint and does not adequately invoke *Fox*. The Court thus denies dismissal of the § 1983 and Bane Act claims but grants

24cv0234

dismissal of the wrongful death claim on statute of limitations grounds, providing Plaintiffs leave to amend.[7]

### 2.    Failure to State a Claim

In the alternative, Defendant NaphCare seeks dismissal according to Rule 12(b)(6), arguing that Plaintiffs have failed to state a cognizable claim.

Plaintiffs bring the following causes of action against Healthcare Defendants: (1) *Monell* liability (42 U.S.C. § 1983); (2) Right of Association (42 U.S.C. § 1983); (3) Bane Act (Cal. Civ. Code § 52.1); and (4) Wrongful Death (Cal. Civ. Code § 377.60). (Compl.)[8] The Court addresses each claim in turn.

### a.    First Cause of Action: *Monell* Liability

To start, Plaintiff The Estate of Raymond Vogelman alleges *Monell* liability under 42 U.S.C. § 1983. Plaintiffs assert this claim against the County of San Diego, Liberty, and NaphCare. (Compl. ¶ 257.)

The same *Monell* legal standards—articulated in the fourth cause of action, Section (III)(A)(4)—apply here.[9]

If Defendant Pena violated at least one alleged constitutional right, the Court proceeds to an analysis of *Monell* liability against Defendant NaphCare. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). The Court has already found in Sections (III)(A)(1), (2), and (3) that Plaintiffs plausibly allege deliberate indifference against Defendant Pena. *See Est. of Sandra Vela v. Cnty. of Monterey*, No. 16-cv-02375-BLF, 2016

---

[7] Given the timeliness of Plaintiffs' claims and the leave to amend, the Court declines to analyze the relation back doctrine.

[8] Plaintiffs' second amended complaint includes a negligence cause of action, but the claim has since been dismissed against Defendants Liberty and NaphCare. In separate filings, Plaintiffs and Defendant Liberty jointly dismissed the negligence cause of action against it. (ECF No. 65.) And Plaintiffs' opposition brief voluntarily dismissed the claim against Defendant NaphCare. (Opp'n Healthcare 29:27–28.) Thus, the negligence claim is dismissed as against the Healthcare Defendants.

[9] A private entity, acting under color of state law, can be held liable under § 1983 when a custom or policy gives rise to a constitutional deprivation. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012). In other words, a private entity can be subject to *Monell* like a municipality. *Id.* at 1139–40.

- 29 -

WL 4678300, at *4 (N.D. Cal. Sept. 7, 2016) (deciding that the plaintiff plausibly alleged deliberate indifference against the psychologist given that the psychologist "personally discharged the plaintiff from suicide watch safety cell back to a cell in the lockdown unit with known suicide hazards, without adequate suicide prevention precautions, and knowing that mental health clinicians were not at the Jail on weekends" (citation modified)).

Here, Plaintiffs allege a list of customs and failures to train to establish Defendant NaphCare's deliberate indifference. (Compl. ¶¶ 198–214). Nevertheless, the Court fails to see factual allegations to support a *Monell* claim.

Plaintiffs home in on several failure-to-train arguments against Healthcare Defendants in the complaint: (1) Defendants failed to train on how and when to admit a patient into the PSU despite the fact that only their psychiatrists had the legal authority to admit patients into the PSU, (Compl. ¶ 297), and (2) Defendants failed to train on treating patients in the EOH along with the patients' follow-up care, (Compl. ¶ 298). Under this second theory of liability, Plaintiffs state that Healthcare Defendants failed to implement a protocol for communicating vital information to classification or housing deputies so that patients can be monitored. (Compl. ¶ 298.)

Specifically, Plaintiffs allege that Healthcare Defendants failed to train "even in the face of widely known cases in which schizophrenic patients were beaten or killed by their cellmates." (Compl. ¶ 203.) But Plaintiffs do not elaborate on these widely-known cases or how Healthcare Defendants otherwise received notice. Plaintiffs thus have not properly alleged facts to support deliberate indifference. *See, e.g.*, *Smith v. NaphCare Inc.*, No. 3:22-cv-05069-DGE, 2023 WL 2477892, at *5 (W.D. Wash. Mar. 13, 2023) ("Unlike their failure to train claim against Kitsap County, Plaintiffs do not allege previous suicides had taken place under NaphCare's tenure.").

In the briefing, Plaintiffs seem to argue that the training and supervision was so minimal that its unconstitutional nature would be obvious. In support, Plaintiffs discuss the cases *Estate of Nunez by & through Nunez v. County of San Diego*, 381 F. Supp. 3d 1251

24cv0234

(S.D. Cal. 2019) and *Sandoval v. County of San Diego*, 985 F.3d 657 (9th Cir. 2021). Both cases fall under the narrow range of circumstances when the court relaxes notice requirements to hold the defendants accountable for failures to train that could obviously lead to constitutional violations. In *Nunez*, the court found the inadequacy of the training "patently obvious" given that "not one [] individual [from the medical contractor] accepts responsibility for training [the medical contractor's] providers" and "multiple providers, including [the medical contractor's] *directors*, have no understanding that only psychiatrists can place transferred inmate-patients in the PSU." 381 F. Supp. at 1260. In similar obvious circumstances, the *Sandoval* court identified an exceptional case "where deputies believed the cell was being monitored by nurses, and nurses believed it was being monitored by deputies," giving rise to a "veritable no man's land." 985 F.3d at 681 ("The deputies believed that Nurse de Guzman knew that Sandoval was in MOC1 because he required monitoring by the medical staff. In contrast, Nurse de Guzman was adamant that because he had ostensibly cleared Sandoval for booking, Sandoval must have been left in MOC1 for correctional purposes."). However, here, Plaintiffs inadequately plead obvious circumstances to allege deliberate indifference.

The same analysis—as articulated in Section (III)(A)(4) regarding ratification—applies here. (Compl. ¶ 299.)

Thus, drawing all reasonable inferences from the facts alleged in Plaintiffs' favor, Plaintiffs fail to plausibly allege that Defendant NaphCare's failure to train reflected deliberate indifference. Accordingly, Defendant NaphCare's motion to dismiss Plaintiffs' *Monell* liability claim is granted with leave to amend.

### b. Second Cause of Action: Right of Association

Plaintiff J. Leslie Crawford also alleges a violation of her right of association in violation of 42 U.S.C. § 1983. Plaintiffs bring this claim against all Defendants except the County of San Diego. (Compl. ¶ 321.)

The same standard—articulated in Section (III)(A)(6)—applies here.

24cv0234

The parties disagree about whether Defendant NaphCare waived objections to Plaintiffs' right of association claim. Plaintiffs' opposition brief states: "Because NaphCare failed to address in substance Plaintiff's right of association claim and therefore waived it, Plaintiffs will not address it here." (Opp'n Healthcare 25:9-11.) The Court disagrees with this characterization; Defendant NaphCare has not waived its objections to the right of association claim.

Given that Plaintiffs fail to plausibly allege deliberate indifference against Defendant NaphCare and do not put forth other tort violations, they cannot make out a right of association claim.

Thus, drawing all reasonable inferences from the facts alleged in Plaintiffs' favor, Plaintiffs do not plausibly allege a right of association violation. Accordingly, Defendant NaphCare's motion to dismiss Plaintiffs' Fourteenth Amendment claim for right of association is granted with leave to amend.

### c.    Third Cause of Action: Wrongful Death

Next, Plaintiff J. Leslie Crawford alleges wrongful death liability under California state law. Cal. Civ. Proc. Code § 377.60. Plaintiffs bring this claim against all Defendants. (Compl. ¶ 328.) As relevant to Defendant NaphCare, Plaintiffs allege a theory of vicarious liability. (Compl. ¶ 338.) Given that Plaintiffs plausibly alleged deliberate indifference against Defendant Pena—as discussed in Section (III)(B)(2)(a)—drawing all reasonable inferences from the facts alleged in Plaintiffs' favor, Plaintiffs plausibly allege a wrongful death action. Accordingly, Defendant NaphCare's motion to dismiss Plaintiffs' wrongful death claim under a vicarious liability theory is denied.

### d.    Fourth Cause of Action: Bane Act

Finally, Plaintiff The Estate of Raymond Vogelman alleges violation of the Bane Act. Cal. Civ. Code § 52.1. Plaintiffs assert this claim against all Defendants. (Compl. ¶ 340.) Specifically, regarding Defendant NaphCare, Plaintiffs allege Bane Act violations under a theory of direct and vicarious liability. (Compl. ¶¶ 347–48.)

24cv0234

Without plausible allegations of deliberate indifference, the Court fails to see how Plaintiffs can hold Defendant NaphCare directly liable under the Bane Act. However, because Plaintiffs plausibly allege deliberate indifference against Defendant Pena in Sections (III)(A)(1), (2), and (3), Plaintiffs can bring a Bane Act claim under a vicarious liability theory.

Thus, drawing all reasonable inferences from the facts alleged in Plaintiffs' favor, Plaintiffs plausibly allege that Defendant NaphCare can be held liable under the Bane Act on a vicarious liability theory, but not on a direct liability theory. Accordingly, Defendant NaphCare's motion to dismiss Plaintiffs' Bane Act claim is granted with leave to amend as to direct liability and denied as to vicarious liability.

## III.    CONCLUSION

Accordingly, the Court **GRANTS IN PART with leave to amend** and **DENIES IN PART** Defendants' motions to dismiss the second amended complaint. (ECF Nos. 46, 66, 75.)

### PART A:

The Court **GRANTS IN PART with leave to amend** and **DENIES IN PART** Defendants County of San Diego and its officers' motion to dismiss. (ECF No. 46.)

Regarding the motion to dismiss for failure to state a claim, the Court:

(1) denies the motion as to the failure-to-protect claim for the April 12, 2022, incident;

(2) denies the motion as to the failure-to-protect claim for the August 3, 2022, incident;

(3) denies the motion as to the failure-to-protect and inadequate medical care claims for the October 5, 2022, incident;

(4) grants with respect to a ratification theory and denies on a custom and failure to train theory *Monell* liability;

(5) grants with leave to amend the motion as to the supervisory liability claim;

(6) denies the motion as to the right of association claim;

24cv0234

(7) denies the motion as to the wrongful death claim;

(8) denies the motion as to the Bane Act claim; and

(9) denies the motion as to the negligence claim.

Thus, Plaintiffs' *Monell* liability and supervisory liability claims against County Defendants are dismissed from the action with leave to amend.

**PART B:**

The Court **GRANTS IN PART with leave to amend** and **DENIES IN PART** Defendant Liberty's motion to dismiss on statute of limitations grounds (ECF No. 66), and **GRANTS with leave to amend** and **DENIES IN PART** Defendant NaphCare's motion to dismiss on statute of limitations and Rule 12(b)(6) grounds, (ECF No. 77).

Specifically, on statute of limitations grounds, the Court grants with leave to amend Liberty and NaphCare's motions to dismiss the wrongful death claim but denies Liberty and NaphCare's motions to dismiss the § 1983 and Bane Act claims.

Regarding Defendant NaphCare's motion to dismiss for failure to state a claim, the Court:

(1) grants with leave to amend the motion as to the *Monell* liability;

(2) grants with leave to amend the motion as to the right of association claim;

(3) denies the motion as to the wrongful death claim; and

(4) grants with respect to a direct liability theory and denies under a vicarious liability theory the Bane Act claim.

Thus, Plaintiffs' *Monell* liability, right of association, and Bane Act claims against Defendant NaphCare are dismissed from the action with leave to amend.

- 34 -

24cv0234

If Plaintiffs choose to file a third amended complaint, Plaintiffs must do so by March 18, 2026. If Plaintiffs choose not to file a third amended complaint, Defendants are directed to answer the second amended complaint by March 25, 2026.

Further, Plaintiffs shall not add any new claims or parties without leave of Court.

**IT IS SO ORDERED.**

**DATED: February 25, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

- 35 -

24cv0234